<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| MICHAEL LIVINGSTONE, | : | |
| | : | |
| Plaintiff, | : | Civil No. 21-01971 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| HUGO BOSS STORE, ATLANTIC CITY, NJ; | : | |
| HUGO BOSS FASHION, INC. USA.; | : | |
| HUGO BOSS RETAIL, INC., USA; | : | |
| MARINA DISTRICT DEVELOPMENTE | : | |
| CO., LLC D/B/A BORGATA HOTEL | : | |
| CASINO & SPA; | : | |
| KIMBERLY KERN; | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ROBERT B. KUGLER**, United States District Judge:

This matter comes before the Court on the Motions to Dismiss by Hugo Boss Fashion, Inc., USA, Hugo Boss Retail, Inc., USA, Hugo Boss Store, Atlantic City, NJ, and Kimberly Kern (Doc. No. 26) and by Marina District Development Co., LLC ("the Borgata") (Doc. No. 27). In response, Plaintiff has filed several motions: a Motion to Compel Defendant Borgata to file Corporate Disclosure Statement and disclose proper legal name of Hugo Boss Store and to postpone Defendants' Motions to Dismiss and terminate the entry of appearance for Hugo Boss Store's attorney (Doc. No. 35); a Motion to Strike, Quash, or Invalidate the Borgata's Motion to Dismiss (Doc. No. 40); and a Motion to Vacate and a Motion to Stay (Doc. No. 68). For the reasons articulated in this Opinion, Defendants' Motions to Dismiss are **GRANTED** and Plaintiff's pending motions are **DENIED** as moot.

## I.    BACKGROUND

This case arises from Plaintiff Michael Livingstone's personal communications and interactions with an employee at the Hugo Boss Store at the Borgata Hotel in Atlantic City, New Jersey. Mr. Livingstone has been banned from the Borgata, and he seeks to have the ban removed as well as $40 million in damages.

The following background information is taken from the amended complaint. (Doc. No. 7) ("Complaint"). Factual statements in the Complaint are assumed true and viewed in the light most favorable to Mr. Livingstone. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Complaint is 131 pages long, and it contains a detailed account of Mr. Livingstone's experience shopping at the Hugo Boss store in the Borgata, pursuing a Hugo Boss employee romantically, doubting the sincerity of her rejections, contacting her continually, and ultimately getting banned from the Borgata.

Mr. Livingstone is a black man of indigenous West African descent. For five years, Mr. Livingstone was a customer at the Borgata and at the Hugo Boss store there. Ms. Kern is a white woman and a sales employee at Hugo Boss. Mr. Livingstone and Ms. Kern first met around 2015 at Hugo Boss. Mr. Livingstone shopped regularly at Hugo Boss and spoke frequently with Ms. Kern. Mr. Livingstone sometimes went to Hugo Boss only to visit Ms. Kern. Their relationship was cordial. In the Complaint, Mr. Livingstone discusses his relationship with Ms. Kern at length, including itemized lists of personal details about her that he has gleaned from their pleasantries. Mr. Livingstone feels that Ms. Kern's conversations with him evinced a meaningful personal relationship beyond typical salesperson-clientele chatter.

There are several incidents that Mr. Livingstone interprets as indicating that he was "more than" a customer. On October 27, 2020, Ms. Kern showed Mr. Livingstone the excess supply in

the restricted back section of the Hugo Boss store. That same day, Mr. Livingstone gave Ms. Kern a copy of his Borgata Hotel room key and invited her to his room; Ms. Kern declined, stating that as an employee she would not be permitted. Mr. Livingstone then gave Ms. Kern his phone number, but she did not call or text him. The next day, Mr. Livingstone visited at store close to drop off a gift of wine for Ms. Kern and invite her to a different hotel. On October 29, 2020, Ms. Kern sent Mr. Livingstone a text message to thank him for the wine.

On December 8, 2020, Mr. Livingstone wrote a proposal letter to begin a "proper relationship" with Ms. Kern and gave it to her, along with a $400 customized Tumi bag and other gifts, at Hugo Boss. Ms. Kern texted Mr. Livingstone later that evening thanking him for the gift. The following day, Ms. Kern sent him an additional text message declining Mr. Livingstone's romantic advances. Mr. Livingstone sent Ms. Kern Christian materials and voice memos, and uploaded videos to YouTube.com of himself praying for her. Mr. Livingstone describes these videos as "travailing fervent warriorship intercessory Prayers to the extent that Plaintiff was even sweating in the prayer video." Mr. Livingstone maintains that the voice memos could not be construed as harassment because Ms. Kern thanked him for sending them.

On January 5, 2021, Ms. Kern texted Mr. Livingstone stating that she was "still processing" things he had sent her. Mr. Livingstone construed this statement as Ms. Kern still deciding on his proposal to begin a relationship. On January 8, 2021, Ms. Kern texted Mr. Livingstone stating that they did not know each other well, which Mr. Livingstone construed as an invitation to get to know her better and a sign that Ms. Kern was interested in a relationship with him.

On January 10, 2021, Mr. Livingstone believed that Ms. Kern was discussing their personal communications with her coworkers. Mr. Livingstone texted Ms. Kern and sent a voice memo asking her to tell the coworkers "the whole story *without bias.*" Mr. Livingstone told Ms. Kern

that if she did not do same, he would tell the coworkers "his side of the whole story" personally.

On January 11, 2021, Ms. Kern texted Mr. Livingstone pointing out his actions as harassment and stating "I can no longer have you as a client in the Atlantic City store" and "please do not contact me further." Mr. Livingstone replied, "I do not want you to do something silly out of your impulsive emotion and end up losing your nice job. You've done well doing this job for a long time even to buy a condo. I want to protect you nevertheless." Ms. Kern said she would contact Borgata Security.

Mr. Livingstone believes that Ms. Kern was motivated only to prevent Mr. Livingstone from telling her coworkers "the whole story" and to protect herself from having alleged violations of store policy (showing Mr. Livingstone backstock merchandise) exposed. Mr. Livingstone felt personally insulted by Ms. Kern's messages, believing them to be inconsistent with the prior kindness she had shown him. Mr. Livingstone felt that Ms. Kern was lying about feeling unsafe, and that other workers at Hugo Boss did not feel unsafe around him.

On January 16, 2021, Mr. Livingstone met with the Hugo Boss store manager to "clear up [] tension." The store manager told Mr. Livingstone that Ms. Kern would no longer assist Plaintiff in the store.

On January 17, 2021, Ms. Kern texted Mr. Livingstone stating the following:

> "Please do not contact me again, Michael. I have asked you to not reach out to me anymore. I advised you to not shop in this location. You may do as you wish but I will not be your salesperson. I see that you have attempted to bring Court cases to your school and to your landlord. I am not willing to lose my job over your false beliefs. Believe whatever you wish, Michael, in your own time outside of my job. Me declining your offer and saying many times that I am not interested in you has made you go far beyond any respectable action. I do not respect you or your prayers. I do not want any friendship. I do not want you as a client. I am asking you for the last

time to leave me and my coworkers alone."

Many of Mr. Livingstone's claims hinge on this text message's mention of his other ongoing lawsuits and the fact that Ms. Kern searched his name online. Mr. Livingstone continued to text Ms. Kern afterward, emphasizing that he has a right to go to the store, accusing her of stalking, and threatening legal action against her.

On or around January 19, 2021, Ms. Kern contacted Borgata Security about Mr. Livingstone. Mr. Livingstone was then banned from the Borgata. He called the Borgata that day to make a reservation, and his call was transferred to Borgata Security who told him that Ms. Kern had reported ongoing harassment. A Borgata Security staff member emailed Mr. Livingstone stating he is "no longer welcome at the Borgata property and if you are observed on property are subject to charges of trespassing." On January 22, 2021, Mr. Livingstone sent a twelve-page memorandum and PDF of text message images (totaling about ninety pages) to two Borgata Security staff members. Mr. Livingstone asked them to forward these materials to the Hugo Boss store manager. On January 25, 2021, a Borgata Security staff member called Mr. Livingstone to acknowledge receipt of the materials and to confirm that they had been sent to the store manager. He advised Mr. Livingstone to stay away from the Borgata for six months, after which they would review the matter and reinstate Mr. Livingstone. Mr. Livingstone then filed the instant lawsuit against various Hugo Boss entities, the Borgata, and Ms. Kern.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.* Dismissal with prejudice is warranted when no amendments to the complaint could cure its deficiencies. *Bellocchio v. N.J. Dep't of Envtl. Prot.*, 16 F. Supp. 3d 367, 381 (D.N.J. 2014).

As Plaintiff is proceeding *pro se*, we have a "duty to construe [the] pleadings liberally and apply the applicable law, irrespective of whether [plaintiff has] mentioned it by name." *Rose v. Ortiz*, No. 14-1738, 2015 WL 9216589, at *1 (D.N.J. Dec. 16, 2015) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

In deciding the pending motions to dismiss, we limit our review to the face of the Complaint and do not consider any of the proffered Exhibits. As such, the motions to dismiss are not converted to motions for summary judgment under Federal Rule of Civil Procedure 56.

### III.    DISCUSSION

Plaintiff's claims are the following: (1) retaliation, retaliation against federal lawsuits, and retaliation against right to petition for redress of grievances; (2) retaliation under the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (3) retaliation under the Americans with Disabilities Act (ADA) and under the Rehabilitation Act of 1973 § 504; (4) retaliation under the Fair Housing Act (FHA) 42 U.S.C. § 3601 *et seq*; (5) racial discrimination under the Civil Rights Act of 1964; (6) invasion of privacy under federal law; (7) New Jersey Personal Information Privacy and Privacy Protection Act; (8) invasion of privacy, intrusion upon solitude, stalking, and cyber-stalking under New Jersey state law; (9) identity theft and theft by unlawful taking of customer personal information; (10) tortious and intentional interference with professional and economic relationship and with economic advantage under New Jersey state law; (11) negligence, gross negligence, and negligence *per se*; (12) civil harassment and aiding and abetting civil harassment; (13) defamation, defamation-by-innuendo, defamation per se, false light; (14) breach of duty of good faith and fair-dealing; (15) abuse of power, abuse of process, abuse of security power; and (16) negligent training; negligent supervision. Each is discussed in turn.

### 1.    Retaliation, retaliation against federal lawsuits, and retaliation against right to petition for redress of grievances

Mr. Livingstone avers that he was banned from the Borgata in part because he filed federal lawsuits against his university and his landlord, and that the ban is retaliation for filing said lawsuits. In support, Mr. Livingstone points to a message from Ms. Kern referencing those lawsuits.

Mr. Livingstone has not stated a plausible claim for retaliation. A cause of action for retaliation for filing a lawsuit is an invocation of First Amendment protections. The filing of a

lawsuit is constitutionally protected conduct under the First Amendment. *See, e.g.*, *Zorzi v. Cty. Of Putnam*, 30 F.3d 885, 896 (7th Cir. 1994). The First Amendment freedom of speech is a restraint on government action, not on private entities. *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 114 (1973) (citing *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952)). That is, the First Amendment can limit only the conduct of the government – it has no bearing on private conduct. Seeing as none of the Defendants are public officials, and no government action is alleged, it is not possible for Mr. Livingstone to state such a claim for retaliation. Therefore, this claim is dismissed with prejudice.

**2. Retaliation under the Civil Rights Act of 1964, 42 U.S.C. § 2000d**

Mr. Livingstone avers that he was banned from the Borgata in part because he filed a civil rights lawsuit against his university, and that the ban is retaliation for filing said lawsuit. In support, Mr. Livingstone points to a message from Ms. Kern referencing that lawsuit.

Mr. Livingstone has not stated a plausible claim for retaliation under Title VII the Civil Rights Act of 1964. This law protects employees from discriminatory behavior by employers. 42 U.S.C. § 2000e-2(a). It forbids retaliation against an employee or job applicant who engages in a protected activity in the course of a Title VII proceeding. *See, e.g.*, *Moore v. Secretary U.S. Department of Homeland Security*, 718 Fed. Appx. 164 (3d Cir. 2017). Mr. Livingstone is neither an employee nor job applicant for any Defendant, so this claim for retaliation is not available to him. Therefore, it is dismissed with prejudice.

**3. Retaliation under the American Disabilities Act (ADA) and under the Rehabilitation Act of 1973 § 504**

Mr. Livingstone avers that he was banned from the Borgata in part because he filed a lawsuit against his university containing claims under the ADA, and that the ban is retaliation for

filing said lawsuit. In support, Mr. Livingstone points to a message from Ms. Kern referencing that lawsuit.

Mr. Livingstone has not stated a plausible claim for retaliation under the ADA. To state a claim for retaliation under the ADA, a plaintiff must show (1) that he engaged in a protected employee activity, such as making a disability discrimination complaint to a supervisor; (2) the employer took adverse action against the employee either after or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse action. 42 U.S.C. § 12203(a); *see also Gera v. Cty. of Schuylkill*, 617 Fed. Appx. 144, 147 (3d Cir. 2015). Mr. Livingstone is not an employee for any Defendant, so this claim for retaliation is not available to him. Therefore, it is dismissed with prejudice.

**4. Retaliation under the Fair Housing Act (FHA) 42 U.S.C. § 3601 *et seq.***

Mr. Livingstone avers that he was banned from the Borgata in part because he filed a lawsuit against his landlord containing claims under the FHA, and that the ban is retaliation for filing said lawsuit. In support, Mr. Livingstone points to a message from Ms. Kern referencing that lawsuit.

Mr. Livingstone has not stated a plausible claim for retaliation under FHA. The FHA protects individuals from discrimination on the basis of race, color, national origin, sex, religion, familial status, or disability in relation to the sale or rental of housing accommodations. 42 U.S.C. §§ 3604(a), (f). The FHA also prohibits retaliation, making it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment or, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise of enjoyment of, any right granted or protected by [] 42 U.S.C. § 3603, 3604, 3605, or 3606." 42 U.S.C. § 3617. Mr. Livingstone has not alleged any facts to suggest that Defendants

have interfered with his right to rent his apartment. Defendants are not involved with renting or selling housing to Mr. Livingstone, so this claim for retaliation is not available. Therefore, it is dismissed with prejudice.

**5. Racial discrimination under the Civil Rights Act of 1964**

Mr. Livingstone avers that Defendants discriminated against him based on his race and country of origin. Title VI provides that "No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Title VI does not provide for individual liability. *See Whitfield v. Notre Dame Middle Sch.*, 412 Fed. Appx. 517, 521 (3d Cir. 2011). Accordingly, Ms. Kern as an individual Defendant cannot be liable to Mr. Livingstone for any Title VI claim.

Mr. Livingstone has not sufficiently pleaded a Title VI claim against the other Defendants. Mr. Livingstone has alleged no facts connecting his ban from the Borgata to his race or country of origin, other than suggesting that he was banned due to "false stereotypes attributable to Plaintiff's racial background." Neither has he alleged any program or activity receiving federal financial assistance that discriminated against him. Mere conclusions of discrimination are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Without the requisite nexus between federal assistance and alleged discrimination, a Title VI claim is not plausibly stated.

Construing the Complaint liberally, Mr. Livingstone alleges – not by name, but by factual allegation – a violation of Title II instead of Title VI. Title II of the Civil Rights Act provides for injunctive relief against discrimination by places of public accommodation: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

and accommodations of any place of public accommodation [] without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000(a). Places of public accommodation include hotels and establishments located within hotels. 42 U.S.C. § 2000(b)(1), (4).  The remedy under Title II is limited to a civil action for preventive relief, such as injunction. *Three Rivers Center for Independent Living v. Housing Authority of City*, 382 F.3d 412, 420 (3d Cir. 2004). A plaintiff cannot recover money damages, outside of attorneys' fees, under Title II. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968). In order to bring a claim under Title II, a plaintiff must first notify the state or local government entity authorized to grant relief from the alleged discrimination or to institute criminal proceedings. 42 U.S.C. § 2000a-3(c). No civil action may be brought under Title II before thirty days after written notice of the matter to the appropriate state or local entity. *Id.*

Mr. Livingstone has not sufficiently pleaded a Title II claim. The thirty-day state notice requirement under Title II applies to this lawsuit because Mr. Livingstone alleges an instance of discrimination by a hotel, and the state of New Jersey has an established government entity to address claims of racial discrimination. Mr. Livingstone does not allege to have filed the necessary state notice to comply with § 2000a-3(c). Because Mr. Livingstone has not alleged any facts to substantiate allegations of discrimination, and because Mr. Livingstone has not complied with the state notice requirement prescribed by 42 U.S.C. § 2000a-3(c), his claim of racial discrimination is dismissed without prejudice.

### 6. Invasion of privacy under federal law

Mr. Livingstone alleges an invasion of his privacy because Ms. Kern identified Mr. Livingstone's name from his credit card and/or sales records at Hugo Boss and looked him up online. Mr. Livingstone avers that he had a reasonable expectation of privacy in the sales records,

and that his personal identification was misused when Ms. Kern ascertained his name and found his lawsuits. Even when construing the Complaint liberally, Mr. Livingstone cannot state a federal invasion of privacy claim. There is no private civil cause of action for invasion of privacy under federal law. *Rolax v. Whitman*, 53 F. App'x 635, 638 (3d Cir. 2002) ("An invasion of privacy claim is not a constitutional tort, [] but rather a creature of state law."). Therefore, this claim must be dismissed with prejudice.

### 7.   New Jersey Personal Information Privacy and Protection Act

Mr. Livingstone raises the same allegations as the purported federal privacy action but with respect to the "Personal Information Privacy and Protection Act," which we construe as referring to the Personal Information and Privacy Protection Act. This statute restricts the purposes for which a retail establishment may scan a driver's license or similar state-issued identification card. N.J. Rev. Stat. 56:11-54 (2017). Mr. Livingstone's allegations regarding his credit card and sales information at Hugo Boss are not related to the Personal Information Privacy and Protection Act. This claim is not plausible, so it is dismissed with prejudice.

### 8.   Invasion of privacy, intrusion upon solitude, stalking, and cyber-stalking under New Jersey state law

#### A.  Invasion of privacy and intrusion upon solitude

Mr. Livingstone alleges that his privacy rights were violated when Ms. Kern ascertained Mr. Livingstone's last name and looked up Mr. Livingstone's ongoing lawsuits. Under New Jersey state law, the tort of invasion of privacy is "an intentional intrusion, 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns" that "would be highly offensive to a reasonable person.'" *G.D. v. Kenny*, 15 A.3d 300, 309 (N.J. 2011) (citing *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 691 (N.J. Super. Ct. App. Div. 1982) and quoting

Restatement (Second) of Torts, supra, § 652B (Am. La. Inst. 1977)). "[T]here is no wrong where defendant did not actually delve into plaintiff's concerns, or where plaintiff's activities are already public or known." *Bisbee*, 452 A.2d at 691. In New Jersey, intrusion upon seclusion is a classification within the tort of invasion of privacy. *Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994).

To state a claim for invasion of privacy and/or for intrusion upon seclusion, Mr. Livingstone would have to show that he had a reasonable expectation of privacy with respect to his name and his lawsuits. That he cannot do. There is no reasonable expectation of privacy for a person's name. *See State v. J.S.G.*, 192 A.3d 1, 13 (N.J. Super. Ct. App. Div. 2018) ("[A] person 'cannot have a reasonable expectation of privacy' in information 'readily available through public records,' including a person's name.") (citing *Doe v. Poritz*, 662 A.2d 367, 407 (N.J. 1995)). Neither is there a reasonable expectation of privacy for publicly recorded court filings. *See G.D. v. Kenny*, 15 A.3d at 310 (finding no reasonable expectation of privacy in court record). There is no plausible privacy claim based on Mr. Livingstone's public lawsuit information, so these claims are dismissed with prejudice.

### B.  Stalking and cyber-stalking

Mr. Livingstone alleges that Ms. Kern stalked and cyber-stalked him by referencing the lawsuits he had filed against his landlord and his university. He further alleges that his right to be left alone was intruded when Ms. Kern notified Borgata Security of her harassment allegations.

In New Jersey, stalking and cyber-stalking are crimes. N.J. Rev. Stat. 2C:12-10 (2013); N.J. Rev. Stat. 2C:33-4.1 (2013). Mr. Livingstone has made no showing as to whether these criminal statutes give rise to a civil cause of action. Even if there were a civil cause of action for stalking, Mr. Livingstone has alleged no facts to suggest that Ms. Kern's conduct could meet the

statutory definition of stalking. Based on Mr. Livingstone's own filings with the court, Ms. Kern never visited, surveilled, or threatened Mr. Livingstone; in fact, she repeatedly requested that he leave her alone. It is not plausible that an internet search of Mr. Livingstone's name could give rise to a cause of action for stalking, so these claims are dismissed with prejudice.

9. **Identity theft and theft by unlawful taking of customer personal information**

Mr. Livingstone alleges identity theft and unlawful taking of customer personal information because Ms. Kern identified Mr. Livingstone's name from his credit card and/or sales records at Hugo Boss and looked him up online. Mr. Livingstone avers that his personal information was stolen from the sales records, and that his personal identification was misused when Ms. Kern ascertained his full name and looked up his lawsuits online.

Construed liberally, the Complaint purports to bring claims for federal and state identity theft. The federal identity theft statute, 18 U.S.C. § 1028, is a criminal statute without a private cause of action. *See Harris v. Kern Cty. Sheriffs*, No. 19-cv-262, 2019 WL 1777976, at *8 (E.D. Cal. Apr. 23, 2019) (collecting cases across Circuits stating there is no private right of action for Title 18 crimes). In New Jersey, there is a statutory private right of action to recover damages caused by criminal identity theft, N.J. Rev. Stat. § 2C:21-17.4(a) (2013), but it requires a showing of criminal identity theft that resulted in ascertainable loss. Based on the facts as Mr. Livingstone alleges, no Defendant impersonated Mr. Livingstone using his identity information. Without any basis for an allegation of criminal identity theft, Mr. Livingstone cannot recover under this statute. These claims are dismissed with prejudice.

10. **Tortious and intentional interference with professional and economic relationship and with economic advantage under New Jersey state law**

Mr. Livingstone alleges that Ms. Kern, by reporting to her supervisor and to the Borgata

14

Security about Mr. Livingstone's conduct and communications, has interfered with his professional and economic relationship with the Hugo Boss Store and the other employees there.

New Jersey courts have referred to the common law tortious interference with business claim as: "prospective economic relationship," "prospective business advantage," "business relations," or "economic relations;" these claims are the same with the same elements. *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 n.49 (D.N.J. 1998). To state a claim for common-law tortious interference, a plaintiff must show: "1) unlawful, intentional interference with [his] prospect of, or reasonable expectation of, economic advantage, and 2) a reasonable probability that [he] would have received the anticipated economic benefits had there been no interference." *Harper-Lawrence, Inc. v. United Merchs. & Mfrs., Inc.*, 619 A.2d 623, 630 (N.J. Super. Ct. App. Div. 1993) (internal citation omitted). The plaintiff must allege facts showing an existing or prospective economic or contractual relationship. *Eli Lilly*, 23 F. Supp. 2d at 494.

Mr. Livingstone has not alleged a prospective economic relationship. He does not have a business with prospective dealings with Hugo Boss; he is an individual customer. Even if a customer-store relationship were a prospective economic relationship, Mr. Livingstone has not alleged unlawful conduct that interfered with his ability to go to the Hugo Boss at the Borgata. He has not stated a plausible theory as to why an employee reporting his conduct to Borgata Security would be unlawful. Neither has he stated a plausible economic benefit to him of shopping at Hugo Boss. This claim is dismissed with prejudice.

### 11. Negligence, gross negligence, and negligence *per se*

Mr. Livingstone alleges that Ms. Kern was negligent toward him because she "disregarded her employer's policies during her interactions with Plaintiff at the Store, which in turn gave Plaintiff the impression that he is not just a mere client or mere customer to Ms. Kern at the Hugo

Boss Store, and so Plaintiff proposed for a proper relationship with Ms. Kern, which in turn led to accusations of harassment, which in turn led to Plaintiff being banned from the Borgata; thereby infringing upon Plaintiff's freedoms and protected property and liberty interests." (Doc. No. 7 ¶ 386). He further alleges that Borgata breached a duty provide due process before making the decision to ban him, such as by collecting evidence. (Doc. No. 7 ¶ 390).

To state a claim for negligence, a plaintiff must allege that the defendant owed him a duty; the defendant breached that duty; the breach was cause-in-fact of the injury; the breach proximately caused the injury; and that the plaintiff incurred damages. *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014) (citations omitted). Mr. Livingstone has not alleged that any defendant owed him a duty. He suggests that Ms. Kern owed Hugo Boss a duty to abide by company policies, but he does not explain what duty, if any, was owed to him. Even if any of the Defendants breached a duty to him, Mr. Livingstone by his own admission can show neither causation-in-fact nor proximate causation. His theory of causation is that Defendants' actions gave him the impression that Ms. Kern was interested in him, so he "proposed a proper relationship with Ms. Kern." This is Mr. Livingstone's own doing; if his actions and choices are part of the chain of causation that led to his ban from the Borgata, he cannot plausibly show the requisite causal relationship between Defendants' breach and any harm incurred.

Without a claim for negligence, a claim for gross negligence likewise fails. *See Monaghan v. Holy Trinity Church*, 646 A.2d 1130, 1133 (N.J. Super. Ct. App. Div. 1994) ("Negligence differs from gross negligence only in degree, not in kind.") (citing Prosser and Keeton, The Law of Torts § 34 at 212 (5th ed. 1984)). A claim for negligence per se is not stated because there is no allegation of a broken statute or regulation. *See Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156, 1158-59 (3d Cir. 1992). The claims for negligence, gross negligence, and negligence per se are

dismissed with prejudice.

**12. Civil harassment and aiding and abetting civil harassment**

Mr. Livingstone avers that Ms. Kern harassed him by being ambivalent and coded about her religious identity, her interest in his prayers, and her interest in getting to know him better. Ms. Kern had repeatedly told him to leave her alone and stop contacting her, but prior to that, she had shown him kindness and grace in the past when he was a customer. Mr. Livingstone believes that this change in tone amounts to harassment and torture, causing him great financial, psychological, and emotional detriment.

New Jersey does not have a free-standing civil cause of action for harassment. *Hodge v. McGrath*, No. A-4684-12T2, 2014 WL 6909499, at *1 (N.J. Super. Ct. App. Div. Dec. 10, 2014). Mr. Livingstone's allegations could be construed to refer to a claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) intentional conduct; (2) the conduct was extreme and outrageous; (3) the conduct proximately caused plaintiff's emotional distress; and (4) the emotional distress was severe." *DeAngelis v. Hill*, 847 A.2d 1261, 1272 (N.J. 2004) (citing *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988)). We fail to see how any purported inconsistency in someone's tone of communication amounts to intentional infliction of emotional distress. By Mr. Livingstone's own account, Ms. Kern treated him with respect and friendliness as a customer at Hugo Boss. (Doc. No. 7 ¶ 32). Only after his repeated, escalated messages to her did she ask to be left alone. (*Id.* ¶ 120). Mr. Livingstone has not stated a conceivable claim for intentional infliction of emotional distress, so it is dismissed with prejudice.

**13. Defamation, defamation-by-innuendo, defamation per se, false light**

Mr. Livingstone alleges that Ms. Kern defamed him and cast him in a false light by telling

others that he made her feel unsafe and uncomfortable and by not stating her allegations of harassment clearly enough. Mr. Livingstone alleges that Ms. Kern lied about being harassed by Mr. Livingstone's YouTube videos and voice memos because she had thanked him for sending them. Mr. Livingstone alleges that Ms. Kern's report of harassment was defamatory because he presented no true risk of harm to the employees at the Hugo Boss Store.

To state a claim for defamation, a plaintiff must show "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009). Statements of opinion are not capable of proof of truth or falsity, so they generally receive substantial protection under the law. *Ward v. Zelikovsky*, 643 A.2d 972, 979 (N.J. 1994). "Harm from a defamatory opinion statement is redressable when the statement implies underlying objective facts that are false," and "[o]nly if a reasonable factfinder would conclude that the statements imply reasonably specific assertions of fact will the harm be redressable." *Id.* A claim for false light similarly requires that the disputed public statement be in fact false or at least give rise to a false public impression. *Romaine v. Kallinger*, 537 A.2d 284, 290 (N.J. 1988).

Mr. Livingstone has not alleged specific, false facts that were publicly shared that could amount to a defamatory or false light claim. Ms. Kern's characterization of his behavior as harassment is her opinion, which could only give rise to defamation if the implied underlying facts were false. By Mr. Livingstone's own account, the facts underlying Ms. Kern's opinion were true. He did share several lengthy voice memos and YouTube videos with her, and he did continually contact her after she declined his advances. They disagree only as a matter of opinion: whether those actions amount to harassment. Because Mr. Livingstone is unable to state a cognizable claim

for defamation or false light, these claims are dismissed with prejudice.

### 14. Breach of the implied covenant of good faith and fair dealing

Mr. Livingstone alleges that as a customer at Hugo Boss, he has a contract or implied contract with Hugo Boss, and that the contract or implied contract gives rise to a duty of good faith and fair dealing. Mr. Livingstone further alleges that this duty was breached when the store manager met with Mr. Livingstone on January 16, 2021 and told him he that he may go to Hugo Boss so long as Ms. Kern was not his salesperson, but three days later Borgata Security banned him completely. Mr. Livingstone believes that it was unfair for Borgata Security to make this subsequent decision to ban him based on Ms. Kern's report of harassment, and that Borgata Security should have ascertained more facts substantiating the harassment allegations.

For there to be a breach of the implied covenant of good faith and fair dealing, there first must be a contract between the parties. *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002). A contract requires a bargained-for promise with consideration: "either a detriment incurred by the promisee or a benefit received by the promisor." *Cont'l Bank of Pennsylvania v. Barclay Riding Acad., Inc.*, 459 A.2d 1163, 1172 (N.J. 1983). Mr. Livingstone has not sufficiently alleged a contractual relationship between himself and Defendants. Entering a store as a potential customer does not create a contract: there is no consideration in exchange for any promise. Without a plausible claim of a contractual relationship, a breach of the duty of good faith and fair dealing is not possible. This claim is dismissed with prejudice.

### 15. Abuse of power; abuse of process, and abuse of security power

Mr. Livingstone alleges that Ms. Kern threatened to accuse him of harassment in order to protect her own employment, and that she improperly bypassed her own supervisor to notify Borgata Security of the harassment. Mr. Livingstone maintains that no Hugo Boss employees felt

unsafe in his presence because they greeted him politely and sold him merchandise as late as January 16, 2021. For these reasons, Mr. Livingstone brings claims of abuse of power, abuse of process, and abuse of security power.

Construing the Complaint liberally, we do not see a stated cause of action. Neither "abuse of power" nor "abuse of security power" is a cognizable claim. Abuse of process is a tort "for the improper, unwarranted and perverted use of process" after the process has been issued by a court. *Baglini v. Lauletta*, 768 A.2d 825, 831 (N.J. Super. Ct. App. Div. 2001) (citation omitted). The Borgata Security is not a court of law, so a claim for abuse of process regarding their decision to ban Mr. Livingstone is not cognizable. These claims are dismissed with prejudice.

## 16. Negligent training and negligent supervision

Mr. Livingstone alleges that Hugo Boss negligently trained and supervised Ms. Kern because she was friendly toward him and because she showed him excess inventory in the back of the store, giving him reason to believe that she was interested in a relationship with him. He further alleges that Hugo Boss negligently trained and supervised Ms. Kern because she searched his name online.

An employer is only liable for negligent supervision if all elements of a tort for negligence are present. *Dixon v. CEC Entm't, Inc.*, 2008 WL 2986422, at *16 (N.J. Super. Ct. App. Div. Aug. 6, 2008). Here, because a claim for negligence is not plausible as discussed above, neither is a claim for negligent supervision.

To state a claim for negligent training, a plaintiff must plead the elements of negligence: (1) Defendant owed a duty to Plaintiff to properly train Defendant's employees; (2) Defendant breached that duty; (3) Defendant's breach proximately caused Plaintiff's injury; and (4) Defendant's breach caused actual damages to Plaintiff. *Stroby v. Egg Harbor Twp.*, 754 F. Supp.

2d 716, 721 (D.N.J. 2010). Here, Mr. Livingstone based on his own assertions cannot meet the elements of negligence. Assuming Hugo Boss owed a duty to Mr. Livingstone to train its employees, it is not plausible that Ms. Kern's initial kindness toward Mr. Livingstone amounted to any kind of breach. It is likewise not plausible that Mr. Kern learning Mr. Livingstone's name amounted to any kind of breach. We fail to see how Hugo Boss, or Ms. Kern for that matter, are legally responsible for Mr. Livingstone's choices to visit Ms. Kern repeatedly at her work, send her gifts, invite her to his hotel room, upload YouTube videos about her, or send the text message on January 17, 2021 that got escalated to Borgata Security and resulted in his ban. These claims are dismissed with prejudice.

## IV.    PLAINTIFF'S PENDING MOTIONS

Mr. Livingstone has several motions pending before the Court: a Motion to Compel Defendant Borgata to file Corporate Disclosure Statement and disclose proper legal name of Hugo Boss Store and to postpone Defendants' Motions to Dismiss and terminate the entry of appearance for Hugo Boss Store's attorney (Doc. No. 35); a Motion to Strike, Quash, or Invalidate the Borgata's Motion to Dismiss (Doc. No. 40); and a Motion to Vacate and a Motion to Stay (Doc. No. 68). Because Mr. Livingstone's Complaint is dismissed in its entirety for failure to state a claim, these pending motions are denied as moot.

Mr. Livingstone has repeatedly conveyed to the Court that he has more information and briefing that he would like to file. To the extent Mr. Livingstone has additional information to share that is relevant to this Court's adjudication of his claim, he may seek to do so by moving to file a second amended complaint per Federal Rule of Civil Procedure 8. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 8(d)(1) ("Each allegation must be

simple, concise, and direct."). However, he cannot repeat any allegation or claim that has been dismissed with prejudice.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (Docs. No. 26, 27) are **GRANTED**, and Plaintiff's pending motions (Docs. No. 35, 40, 68) are **DENIED** as moot. Plaintiff's claim pursuant to 42 U.S.C. § 2000(a) is dismissed without prejudice, and all other claims contained in the Complaint are dismissed with prejudice. Within fourteen (14) days, Plaintiff may make a motion for leave to file a second amended complaint curing the deficiencies noted herein only with respect to his 42 U.S.C. § 2000(a) claim. If Plaintiff does not make a motion to file a second amended complaint within fourteen (14) days, then the 42 U.S.C. § 2000(a) claim will be dismissed with prejudice also. An Order follows.

Dated: 9/1/2021                                                        /s/ Robert B. Kugler
                                                                             ROBERT B. KUGLER
                                                                             United States District Judge